AO 91 (Rev. 11/11) Criminal Complaint

FILED
United States District Court
Albuquerque, New Mexico
Mitchell R. Elfers
Clerk of Court

# UNITED STATES DISTRICT COURT
for the
District of New Mexico

| | |
|---|---|
| United States of America<br>v.<br>KAREN NAOMI CANTU (YPB: 2002)<br><br>*Defendant(s)* | )<br>)<br>)  Case No.  **25mj23**<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __January 6, 2025__ in the county of __Bernalillo__ in the _____ District of __New Mexico__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1), (b)(1)(A; 21 U.S.C. 846 | Distribution of 50 Grams and More of Methamphetamine; Conspiracy to Distribute Controlled Substances |

This criminal complaint is based on these facts:

See attachment Affidavit In Support of A Criminal Complaint.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Tyler K Foster, Deputy United States Marshal
*Printed name and title*

Electronically signed and telephonically sworn.

Date: 01/10/2025

_____
*Judge's signature*
Steven C. Yarbrough, US Magistrate Judge

City and state:  Albuquerque, New Mexico

*Printed name and title*

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Tyler K Foster being duly sworn, hereby depose and state as follows:

## INTRODUCTION AND BACKGROUND OF THE AFFIANT

1. I make this affidavit in support of a criminal complaint and arrest warrant for KAREN NAOMI CANTU (year of birth 2002) (hereafter "CANTU"), for violations, collectively referred to hereinafter as the "Target Offenses":

   a. 21 U.S.C. §§ 841(a)(1), (b)(1)(A), namely Distribution of 50 Grams and More of Methamphetamine; and

   b. 21 U.S.C. § 846, namely Conspiracy to Distribute Controlled Substances.

2. I am a Deputy United States Marshal with the USMS and have been since July 19, 2022. I have received and completed training at the Federal Law Enforcement Training Academy ("FLETC") as a criminal investigator. During my tenure with the USMS, I have investigated and assisted in the apprehension of federal, state, and local fugitives to include but not limited to sex offenders, gang members, violent repeat offenders, and those with extensive criminal history.

3. In conjunction with my current assignments as a member of the USMS Southwest Investigative Fugitive Team ("SWIFT"), I am assisting the FBI VGTF with the ongoing criminal investigation into drug distribution and the introduction of contraband into Cibola County Correctional Center[1] ("CCCC").

4. The statements contained in this affidavit are based upon experience and familiarity with the instant investigation. Because this affidavit is being submitted for the limited purpose of securing a criminal complaint, I have not included each and every fact known to me concerning

---

[1] Cibola County Correctional Center is controlled and operated by CoreCivic, which is a private company that provides corrections, detention, and reentry services to local, state, and federal government.

1

this investigation. I have set forth only the facts which I believe are necessary to establish probable cause to support a criminal complaint against CANTU for the Target Offenses.

## PROBABLE CAUSE

### INTERCEPTED COMMUNICATIONS

5. On October 30, 2024, the VGTF along with members of the USMS, and other law enforcement agencies executed 18 search and arrest warrants aimed at disrupting the flow of controlled substances into CCCC (reference Case No. MR 24-1983 through MR 24-1995). I was assigned to a search location in Grants, NM. The results of the October 30 operations resulted in the seizure of firearms, ammo, fentanyl, methamphetamine, approximately $6,000 in cash, cell phones, and 10 arrests.

6. In the weeks leading up to the above referenced search warrant, agents spoke with dozens of subjects who provided information on the drug activities in CCCC. Agents learned that Joseph BALDONADO, aka: "Happy," was incarcerated at CCCC, he regularly went to dialysis, and he picked up drugs while at the dialysis appointment. BALDONADO's cell was subsequently searched and investigators located drugs.

7. On December 30, 2024, investigators intercepted a recorded video call between USMS inmate Angello SANDOVAL, BALDONADO, and CANTU. During the recorded call, the three individuals talked about and planned to drop narcotics/contraband off at BALDONADO's next dialysis appointment at Fresenius Kidney Care ("Fresenius") located at 300 Unser Blvd NW, Albuquerque, NM. The next appointment was scheduled for December 31, 2024.

8. Specifically, after BALDONADO was transported to Fresenius, CANTU was to place a "package" on the door handle of the CCCC prisoner transport vehicle. BALDONADO would retrieve the package and bring it back to the facility. SANDOVAL stated that CANTU

could make $2000 every 2-3 weeks for making the drops. Towards the end of the conversation, all three individuals agreed to complete the drug drop off on the next day. A picture of CANTU was captured during this video call and was compared to her New Mexico Driver's License photo. The license photo of CANTU appears to be the same person at the Karen CANTU logged in to the recorded video visits. Below, the left photograph is from the video visit and the photograph on the right is from CANTU's driver's license.



9.      On December 31, 2024, members of the USMS and VGTF planned to conduct a surveillance/enforcement operation at Fresenius to interdict this suspected contraband drop. As law enforcement began setting up surveillance, the CoreCivic Intelligence Unit notified members of the USMS and VGTF that BALDONADO refused treatment and would not be showing up to Fresenius. Following this, the operation was cancelled for the day.

10.     On the morning of January 6, 2024, the CoreCivic Intelligence Unit informed your affiant that they intercepted another video call between SANDOVAL and CANTU. The video call started at approximately 07:52 AM. In the video, CANTU was wearing a black hoodie and

3

appeared to be driving a maroon Chevrolet sedan. SANDOVAL asked CANTU if she found the vehicle and building (referring to the CCCC transport vehicle and Fresenius). CANTU responded that she is "about to do it."

11.     Later in the video, CANTU was seen putting the phone into what appeared to be a pocket, it then sounds like she walked across a road. As she approaches something, you could hear her say "it's done." CANTU later reappeared in the video showing her face two, minutes later she then ended the call with SANDOVAL. In total, this call lasted approximately 20 minutes and 54 seconds.



## SEIZURE OF NARCOTICS

12.     Following the intercepted video call, members of the USMS-SWIFT responded to Fresenius to locate the suspected contraband.

13.     At approximately 11:00 AM, members of USMS-SWIFT located a rectangle shaped object wrapped in black electrical tape from the rear passenger door handle of the CCCC transport vehicle #6311 parked in the Fresenius parking lot. Based on the shape, size, and

4

packaging material, USMS investigators seized this object and suspected that it was narcotics (see below).

14.     Following the seizure, agents opened the package, locating approximately 114 grams of a white crystal substance, which appeared to be and was consistent with methamphetamine. A methamphetamine field test was preformed and resulted in a positive reaction for methamphetamine. The methamphetamine was tagged into evidence and photos of the package are contained below.



15.     Agents continued surveillance at Fresenius, at approximately, 12:00 PM, BALDONADO exited the building in a red and white stripped CCCC inmate jumpsuit, escorted by two-armed security guards. BALDONADO opened the back rear passenger door, as he opened the door he paused as if he was looking for something in the door handle. He then entered the vehicle and the CCCC armed guards drive off to return to CCCC.

## REVIEW OF FRESENIUS SURVEILLANCE FOOTAGE

16. Agents subsequently observed video surveillance footage from the Fresenius parking lot. During viewing of the video surveillance footage of the front parking lot, USMS investigators were able to observe CCC transport vehicle #6311 arrive at Fresenius at approximately 07:33 AM on January 6, 2025. Upon arrival, BALDONADO is seen exiting the vehicle and escorted by the two CCCC guards inside the facility. At approximately, 08:21 AM, a maroon Chevrolet sedan is seen driving through the parking lot of the clinic without stopping to park. This vehicle matched the similarly to the vehicle that CANTU was identified driving during previous recorded video calls.

17. At approximately, 08:26 AM, surveillance footage captured the maroon vehicle parking across Coors Blvd at a strip mall and a female (CANTU) wearing a black hoodie and black pants/leggings exited the vehicle and walked across traffic towards the dialysis clinic. At approximately 08:27 AM, CANTU walked to the rear passenger door of the CCCC transport vehicle and appeared to place something in the door handle. Seconds later CANTU abruptly turned around and proceeded to walk back across traffic to the maroon sedan parked on the westside of Coors Blvd.





18.     On January 6, 2025, at approximately 02:05 PM the CoreCivic Intelligence Unit intercepted a 3rd call between SANDOVAL and CANTU. During this call, SANDOVAL was observed in a panic talking fast and firing off question to CANTU asking IF she "actually did it?" and what the "color of the car" was that she put it on. CANTU responded "yes" and "white" she proceeded to tell SANDOVAL that she placed "it" in the "back passenger door."

19.     Investigators continue to receive information that SANDOVAL and CANTU continue to plan to smuggle drugs into CCCC. For this reason, I believe that it is necessary to execute this warrant as swiftly as possible to stop the threat of narcotics being introduced into CCCC.

## CONCLUSION

20.     In summary, based on the above information, I believe there is probable cause to believe that, on January 6, 2025, CANTU violated:

a. 21 U.S.C. §§ 841(a)(1), (b)(1)(A), namely Distribution of 50 Grams and More of Methamphetamine; and

b. 21 U.S.C. § 846, namely Conspiracy to Distribute Controlled Substances.

21.     This affidavit was reviewed by Assistant United States Attorneys Paul Mysliwiec and David Hirsch. I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Tyler K Foster
Deputy United States Marshal
United States Marshals Service

Electronically signed and telephonically sworn on ___January 10th___, 2025:

HONORABLE STEVEN C. YARBROUGH
UNITED STATES MAGISTRATE JUDGE
Albuquerque, New Mexico